FILED

2005 Dec-22 AM 11:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| LOIS DEAS, RALPH WADE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| V. | ) CIVIL ACTION NO. CV-04-H-0491-S |
| | ) |
| RUSSELL STOVER CANDIES, INC., | ) |
| BRUNO'S SUPERMARKETS, INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The named Plaintiff and the settlement class ("Plaintiffs") in conjunction with Russell Stover Candies, Inc. ("Russell Stover"), have submitted for approval a proposed settlement of this class action that is memorialized in a Settlement Agreement which was preliminarily approved by this Court on September 26, 2005 (referred to as the "Stipulation," "Settlement Agreement," "Settlement," or "Agreement."). For the reasons set forth below, pursuant to Fed. R. Civ. P. 23 and the Final Fairness Hearing which occurred on December 22, 2005, the Court has determined that the Settlement is fair, adequate and reasonable and should therefore be approved. The Court makes the following findings of fact and conclusions of law. It has contemporaneously issued a Final Order and Judgment approving the Settlement and dismissing the Complaints in this action with prejudice. These Findings of Fact and Conclusions of Law are incorporated by reference in this Final Order.

## I.     BACKGROUND

### A.     Materials Considered by the Court

1.     In reaching its decision in this case, this Court has considered the written submissions of the parties.  As discussed below, both sides have fully briefed the request for approval, and they have supported the request with numerous submissions, including but not limited to, documents produced in the litigation, the labels put at issue, deposition testimony from an officer of the Defendant, and affidavits.  Both plaintiffs' counsel and defendant's counsel also made oral presentations at the December 22, 2005 fairness hearing (the "December 22 hearing").

2.     As discussed in more detail below, the Court also considered the favorable response to the settlement, as evidenced by the lack of a single written or oral objection, by any Class Members and the lack of a single "opt out" from the settlement.

### B.     History of the Litigation

3.     On  February 2, 2004, the Plaintiffs filed the Complaint for damages and equitable relief, on behalf of themselves and the Class, alleging that Russell Stover had engaged in unlawful and deceptive labeling of its "low carbohydrate" food products.  Specifically, Plaintiffs contend that such products were improperly labeled as "Low Carb" when the products were not actually lower in carbohydrates than other similar products.  Plaintiffs Amended Complaint contends that the labeling of Russell Stover food products is intentionally misleading with regard to the characterization of the actual number of carbohydrates contained in such products.  Based upon these allegations,

Plaintiffs allege causes of action for unjust enrichment, fraudulent suppression, breach of implied warranty, breach of express warranty and unfair merchandising practices and seek compensatory damages, restitution, declaratory and injunctive relief (the "Initial Claims").

4.      Russell Stover has, and continues, to vigorously deny Plaintiffs' allegations and contends, *inter alia*, that it did not mislabel or mislead in any way the named Plaintiffs or the Class and contends that neither the Named Plaintiffs nor the alleged Class has been damaged in any manner whatsoever. In support of its position, Russell Stover has filed, among other things, copies of the labels at issue and the affidavit of Dr. Barbara Rasco, Ph.D., J.D.

5.      In response to the Complaint, Russell Stover removed the case to the U.S. District Court for the Northern District of Alabama and filed an Answer denying the substantive allegations of the Complaint and asserting affirmative defenses including, but not limited to, *inter alia*, failure to state causes of action and that Named Plaintiffs' claims are barred by, among other things, the comprehensive regulatory and enforcement scheme set forth in the Federal Food, Drug and Cosmetic Act and regulations promulgated by the United States Food and Drug Administration, under which no private right of action can be maintained, the First Amendment to the United States Constitution and the applicable statute of limitations. Additionally, Russell Stover contends that all information regarding the amount of carbohydrates in each candy and how that amount

was calculated is clearly and accurately set forth on each candies' label. Russell Stover also denied, for numerous reasons, that any class could be properly certified.

6.     The prosecution and defense of this litigation has been vigorous, with substantial fact investigation, formal and informal discovery, and motion practice. In addition, broad document discovery has been completed.

7.     Following many months of protracted arms-length negotiations, the parties and their attorneys executed a Settlement Agreement, in which the parties agreed to settle the Litigation subject to the Court's approval and the determination of the fairness, reasonableness, and adequacy of the Settlement as outlined in the Settlement Agreement.

8.     This Court held a hearing on the preliminary approval of the Settlement Agreement, class certification for settlement purposes, and issuance of Notice to the members of the Settlement Class, among other things. On September 26, 2005, the Court entered its Findings and Order, which certified a class pursuant to Fed.R.Civ.P. 23(b)(3) for settlement purposes, appointing Counsel for the Class, directing the issuance of Notice to the Class, and scheduling a Fairness Hearing (the "September 26 Order".)

9.     The parties came before this Court on December 22, 2005, seeking final approval of the proposed Settlement between the Class Representatives (Lois Deas and Ralph Wade), both individually and on behalf of the class, and Russell Stover as set forth in the Settlement Agreement.

556435

4

## C.   The Parties and Their Counsel

10.   **The Class Representatives** – Plaintiffs Lois Deas and Ralph Wade (the "Plaintiffs" or "Named Plaintiffs") are each citizens and residents of the State of Alabama. In the September 26, 2005 Order this Court designated Lois Deas and Ralph Wade as the representatives of the Settlement Class.

11.   **Class Counsel** – Named Plaintiffs and the Class are represented by James H. McFerrin and James Stirling. Both counsel are experienced plaintiff's counsel with expertise in consumer and class action litigation.

12.   **Defendant** – Defendant Russell Stover is a corporation and distributes its food products throughout the United States.

13.   **Defendant's Counsel** – Russell Stover is represented by able legal counsel,  Rik Tozzi, Robert Mackenzie, and William Johnson, of the Starnes and Atchison law firm.

## D.   The Settlement

14.   This action has been vigorously contested since its filing in February, 2004. Following months of protracted negotiations, Russell Stover and the Named Plaintiffs reached agreement to resolve with prejudice Plaintiffs' allegations, and all claims arising out of or related to the advertising or labeling or packaging of Russell Stover food products or which are in any way related to the Released Claims (as defined in the Settlement Agreement) which have been asserted or could be asserted by or on behalf of the Class or any Class Members. The intent and purpose of the Agreement is to

effect a fair and reasonable, full and final settlement of this litigation against Russell

Stover (and the "Released Parties") including all Claims and actions, demands, causes of

action, and liabilities as fully described in the Settlement Agreement, which may have

heretofore been, or may hereafter be, asserted by or on behalf of any person or persons

described in said Class arising from or related to the Claims or to the advertising or

labeling or packaging of  Russell Stover food products, or to the Released Claims (as

defined in the Settlement Agreement).

        15.   The Court finds that a resolution of the Action in the manner

proposed by the Settlement Agreement, as previously preliminarily approved, is superior

to all other available methods for a fair and efficient adjudication of the Action.  The

proposed resolution of this Action involves two types of relief, including: (i) Russell

Stover and the named plaintiffs consent to an injunction precluding  Russell Stover from

using the term "Low Carb" on labeling or advertising in relation to candy products until

"low carb" or "low carbohydrate" is defined by appropriate regulating authorities or

statute provided, however, that such restriction does not prohibit Russell Stover,

Pangburns or Whitman's from usage of the terms "low carb" or "low carbohydrate" or

variations of these terms in conjunction with other descriptive language such as "for low

carb lifestyles" or for "low carb diets," and (ii)  The proposed settlement that has been

reached requires Russell Stover to create a settlement fund with a value of $935,000.00

from which class members may claim one of two class benefits for the purchase of up to

five (5) "covered products."  Finally, the Agreement requires that Russell Stover absorb

the cost of notice and administration costs of the settlement in addition to the above-stated benefits flowing directly to the Class. The Court also notes that, because the action is being settled rather than litigated, the Court need not consider the manageability issues that might be presented by a trial of a nationwide class action involving the issues in this case. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

16.    Additionally, this case is not governed by the Class Action Fairness Act of 2005, Pub. L. No. 108-2, 119 Stat. 4 (codified in sections of 28 U.S.C.) because it was filed almost a year before the Act's effective date - - February 18, 2005. 119 Stat. at 4. (Plaintiffs filed this action on February 4, 2004).

17.    It is clear from the plain language of the statute, that CAFA applies only to "civil action[s] commenced on or after the date of enactment of this Act." 119 Stat. at 14. (*See also Bush v. Cheaptickets, Inc.*, 425 F.3d 683 (9th Cir. 2005); *Schillinger v. Union Pacific Railroad*, 425 F.3d 330 (7th Cir. 2005); *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090 (10th Cir. 2005); *Beasley v. Prudential General Insurance Company*, 05-4026 (W.D. Ark. October 31, 2005); *Hensley vs. Computer Services Corp.*, No. 05-CV-4034 (W.D. Ark. Oct. 28, 2005); *Vescauage vs. Wyeth, Inc.*, No. 05-CV-294-FTM-335PC (M.D. Fla. Aug. 30, 2005).

18.    Class Counsel have concluded that a settlement of the Litigation upon the terms and conditions of the Settlement Agreement would be in the best interests of the Class considering the totality of the circumstances, including but not limited to the substantial benefits afforded by the settlement to all Class Members, and the risks,

556435                                                7

uncertainty and expense of litigation. Although Russell Stover denies all liability with respect to any and all claims alleged against it, Defendants have agreed to enter into the Settlement Agreement so as to avoid the substantial expense, inconvenience, distraction, uncertainty and risks associated with continued litigation.

19.     In making these findings, the Court has considered, among other factors, (i) the interest of Class Members in individually controlling the prosecution or defense of separate actions, (ii) the impracticability or inefficiency of prosecuting or defending separate actions, (iii) the extent and nature of any litigation concerning these claims already commenced, and (iv) the desirability of concentrating the litigation of the claims in a particular forum.

### E.     The September 14 Hearing and Preliminary Approval Order

20.     On September 14, 2005, the Court held a hearing at which it preliminarily approved  the Settlement Agreement and directed the parties to send Notice to the class.

21.     The Court then entered a September 26, 2005 Order preliminarily certifying a Class for settlement purposes, appointing Counsel for the Class, directing the issuance of Notice to the Class, scheduling a Fairness Hearing and ruling, among other things, that the Settlement was sufficiently fair, reasonable, and adequate to warrant the sending of Notice of the Action and proposed settlement to the class members.

22.     Consistent with the Court's Order, as set forth in the affidavit of Kimberly R. Ness of Rust Consulting, Inc., the parties provided Notice of the proposed

settlement to the class members.  As ordered by the Court, Russell Stover published a Notice of Class Action and Hearing On Proposed Settlement in the *USA Today*, Life Section, one weekday a week for two consecutive weeks as soon as was practicable following preliminary approval. The Court notes that the efficiency of the notice and notice process is evidenced by the fact that as of December 11, 2005, one hundred and ninety-nine (199) putative class members had already requested claims forms and seventy-seven (77) of those had returned claims forms claiming a benefit under the settlement.  This rate of return is specifically noteworthy given that putative class members have a further sixty (60) days after entry of the Court's Final Order to make a claim for class benefits.

### F.    The Fairness Hearing

23.    The Court held a hearing regarding the fairness, adequacy and reasonableness of the Settlement Agreement on December 22, 2005.

24.    Both Plaintiffs' counsel and counsel for Russell Stover made presentations in support of the Settlement at the December 22, 2005 hearing.

25.    The Court has determined that the proposed Settlement is fair, reasonable, and adequate.  The Court has entered a Final Order and Judgment approving the class action settlement.  Pursuant to that Order, the complaint in this action is dismissed with prejudice.

### G.    The Release

26.    In exchange for the benefits provided by the Settlement, the Settlement Agreement contains a release that bars Class Members from asserting in any other lawsuit or proceeding any of the claims that have been or could have been asserted in this action. The release and prohibition on future or other litigation is included in the Court's Final Order and Judgment. The Court explicitly finds that it has, and will maintain, personal jurisdiction over all class members to enforce all terms of the settlement, including the bar on future litigation.

### H.    Value of the Relief

27.    As discussed herein, under the Settlement Agreement, Russell Stover has agreed to injunctive relief and monetary relief.

28.    The Court finds that the Settlement will provide substantial economic and non-economic value to the class.

## II.    JURISDICTION

### A.    Subject Matter Jurisdiction

29.    This Court possesses subject matter jurisdiction over the subject matter of this action.

### B.    Personal Jurisdiction

30.    The Court has personal jurisdiction over Named Plaintiffs and class members from Alabama because those persons have minimum contacts with this forum. The Court also has personal jurisdiction over out-of-state class members because, as discussed in more detail below, proper Notice has been provided to them and they have

556435                                    10

been given a chance to opt out or be heard. *See, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12, (1985); *In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 306 (3d Cir. 1998), *cert. denied,* 119 S. Ct. 890 (1999).

31. The Court therefore finds that all class members who did not request exclusion from the class are subject to this Court's personal jurisdiction. *See Phillips Petroleum Co.,* 472 U.S. at 812.

## III. NOTICE TO CLASS MEMBERS

32. The form of the full Notices published in *USA Today* were approved by this Court. Based on the findings set forth below, the Court affirms these approvals.

33. As detailed in the affidavit of Kimberly K. Ness of Rust Consulting, Inc.'s publication notice was provided to the class on two occasions. Specifically, the Notice was published one week day a week for two consecutive weeks in the "Life" section of *USA Today*, on October 7, 2005 and October 12, 2005. The Notice provided to class members contains clear and comprehensive information in a reader-friendly format detailing accurate information about the lawsuit, and is the best practicable Notice under the circumstances. The Notice is fully consistent with Federal Rule of Civil Procedure 23 and Due Process requirements. *See, Simer v. Rios,* 661 F.2d 655 (7th Cir. 1981); *Battle v. Liberty National Life Insurance Co.,* 771 F. Supp. 1499, 1522 (N.D. Ala. 1991) (to satisfy due process and Rule 23(c)(2) the Notice "need only properly identify the plaintiff and generally describe the terms of the Settlement so as to alert members with adverse viewpoints to investigate and to come forward and be heard").

11

## IV.   CLASS CERTIFICATION

34.     In its September 22 Order, the Court preliminarily certified the Class for settlement purposes.  Plaintiffs argue that final certification of this action is both appropriate and warranted.  Russell Stover has taken the position that certification is appropriate for settlement only.  The Court makes the following findings in support of its decision to grant final certification of the Class for settlement purposes, which are intended to supplement and finalize the certification findings made by this Court in its September 26 Order.

35.     In order to certify this Settlement Class, the Court must find that the proposed class meets the four threshold requirements of Federal Rule of Civil Procedure 23(a) — numerosity, commonality, typicality and adequacy of representation — and, in addition, is maintainable under Rule 23(b)(3).  The Rule 23(b)(3) requirements are that common questions "predominate over any questions affecting only individual members" and that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy."

36.     In *Amchem Prods, Inc. v. Windsor,* 521 U.S. 591, 618 (1997), the Supreme Court expressly acknowledged that cases may be certified for settlement purposes only. In doing so, the Supreme Court stated that the "dominant concern" on which a court should focus in deciding whether to certify a class is "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621.   The Court further held that, when the question of

certification is raised in connection with a class action settlement, "settlement is relevant to a class certification," *id.* at 619, and "must be considered as a factor in the calculus..." *Id.* at 622.

37.     **Numerosity** — There is no question that the class proposed in this case -- a nationwide class of all retail consumer purchasers of any Russell Stover food products with a label bearing the term "low Carb" label at any time prior to September 26, 2005 -- meets the numerosity requirement. *See, e.g., Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1981) (generally, more than 40 class members satisfy numerosity), *cert. denied,* 479 U.S. 883(1986).

38.     **Commonality** — The commonality requirement is satisfied when the members of a proposed class share at least one common factual or legal issue. *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986); *Kreuzfeld A.G. v. Carnehammar,* 138 F.R.D. 594, 599 (S.D. Fla. 1991); Herbert Newberg & A. Conte, 1 *Newberg on Class Actions* § 3.10, at 3-51 to -52 (3d ed. 1992); 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.232 (3d ed. 1999). This requirement is thus satisfied when plaintiffs allege common or standardized conduct by the defendant toward members of the proposed class. *See Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir. 1983); *accord In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. at 511 (collecting cases); *Seidman v. American Mobile Sys., Inc.,* 157 F.R.D. 354, 366 (E.D. Pa. 1994) (allegations of ongoing course of conduct satisfied commonality requirement).

39.     In this case, Plaintiffs have alleged common conduct by Russell Stover, toward members of the proposed class -- alleged deceptive and improper labeling of certain candies as "Low Carb". There is no dispute that each label, for each type of candy at issue, was identical. Based on the allegations in the Complaints and other evidence, the Court finds that the commonality requirement is satisfied for purposes of this settlement.

40.     **Typicality** — Typicality is satisfied when the named plaintiffs' injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims, and when the plaintiff's claims and those of the class are based on the same legal theory. *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir. 1985); *Powers v. Stuart-James Co.,* 707 F. Supp. 499, 503 (M.D. Fla. 1989). Slight factual differences that may exist between the class representatives and other Class Members will not defeat typicality. *Appleyard v. Wallace,* 754 F.2d at 958.

41.     The typicality requirement is satisfied in this case because the named Plaintiffs allege claims that arise from the same course of conduct that purportedly harmed all Class Members and are based on the same legal theories – alleged deceptive and improper labeling of its food products as "Low Carb". *See In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. at 518 (typicality requirement met in case alleging replacement, vanishing premium and investment plan claims, because defendants' alleged scheme to defraud was "prominent guiding thread through all of the plaintiffs' claims"); *Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. at 63

(typicality requirement met where "named plaintiffs were subjected to the same deceptive sales techniques allegedly used by [defendants] against other class members"). Based on the evidence before the Court, the Court finds the Plaintiffs' claims to be typical for purposes of this settlement.

42. **Adequacy of Representation** — Rule 23(a)'s adequacy of representation requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem,* 521 U.S. at 625 (citations omitted). This requirement is met when the named class representatives appear to be capable of prosecuting the action through qualified, experienced and competent counsel, and there is no antagonism or disabling conflict between the interests of the named class representatives and the interests of the class members. *See, e.g., Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 726 (11th Cir.) (citation omitted), *cert. denied*, 485 U.S. 959 (1987). In this case, both of these requirements are met.

43. The named class representatives have engaged competent counsel. Lead Counsel in this case, James H. McFerrin is a lawyer of national stature, experienced in the litigation and settlement of large, nationwide class actions. Co-Counsel James Stirling is also clearly qualified to conduct this action. In addition, Plaintiffs' counsel have vigorously conducted this litigation from the outset — opposing Defendant's motion to remove, demanding and receiving from Defendant extensive documents covering all of the issues relating to class certification and confidentially, certain proprietary financial information. Plaintiffs' counsel also took the deposition of Russell Stover's corporate

representative. The settlement negotiations in this case were long, protracted and conducted at arm's length. Only after Plaintiffs' counsel had pursued discovery and satisfied themselves that they had procured the best possible settlement for the Class was an agreement reached. The Class has had more than adequate legal representation.

44. There are no conflicts of interest or other antagonisms between Named Plaintiffs and other Class Members that would impair the representative Plaintiffs' incentive to prosecute vigorously all aspects of the claims against Russell Stover. The Named Plaintiffs have the same incentive as other Class Members who believe they were deceived: to establish the alleged deceptive and improper labeling and to maximize the overall recovery. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes") (internal citation omitted). In addition, it is clear that the settlement benefits the Class and does not involve any sacrifice of the interests of some Class Members for those of others, which is relevant to determining whether there is adequate representation of absent Class Members, *see Amchem Prods, Inc. v. Windsor* 521 U.S. at 621. Finally, the absence of a single request for exclusion or the filing of a single objection confirms that the interests of the named Plaintiff and of Class Members are closely aligned and that the vast majority of Class Members believe that their interests have been well-served.

45. **Predominance of Common Questions** — The predominance requirement in Rule 23(b)(3) focuses "on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem Prods, Inc. v. Windsor,* 521 U.S. at 623. This requirement "requires a *predominance* of common questions, not a *unanimity* of them." *Hanrahan v. Britt,* 174 F.R.D. 356, 365 (E.D. Pa. 1997) (emphasis added; citation omitted). This requirement is thus "not defeated by slight differences in class members' positions." *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied,* 429 U.S. 816 (1976); *accord Kirkpatrick,* 827 F.2d at 725; *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. at 510-11; *Elkins v. Equitable Life Ins. Co. of Iowa,* 1998 U.S. Dist. LEXIS 1557, 1998 WL 133741, at *15 (M.D. Fla. Jan. 27, 1998).

46. The predominance requirement is satisfied when "the litigation will concern 'similar or standardized representations containing significant legal and factual questions which are common to the class.'" *Hanrahan,* 174 F.R.D. at 365 (quotation omitted); *see also In re School Asbestos Litig.,* 789 F.2d 996, 1010 (3d Cir.) (even a few common issues may satisfy the predominance requirement if resolution of issues "will so advance the litigation that they may fairly be said to predominate"), *cert. denied,* 479 U.S. 852 (1986). When confronted with a class of purchasers allegedly defrauded over a period of time by a similar common thread or scheme to which all alleged non-disclosures or misrepresentations relate, "courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is

in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit." *Blackie,* 524 F.2d at 892*; accord Kirkpatrick.,* 827 F.2d at 725.  A claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class wide bases, since such proof obviates the need to re-examine each class member's individual position.  *In re Potash Antitrust Litig.,* 159 F.R.D. 682, 693 (D. Minn. 1995).

47.     In this case, Plaintiffs' allegations of a common course of conduct are sufficient to demonstrate that common questions predominate.    That course of conduct relates to the  alleged deceptive and improper labeling  of Russell Stover food products as 'Low Carb".  *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974) ("in determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met") (quoting *Miller v. Mackey Int'l,* 452 F.2d 424, 427 (5th Cir. 1971))*; see also Amchem Prods, Inc.,* 521 U.S. at 625 ("predominance is a test readily met in certain cases alleging consumer ... fraud"); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d at 314 (case "involving a common scheme to defraud millions of life insurance policy holders" falls within the category of cases that satisfy the predominance requirement).

48.     The Court notes that, to the extent any variations in state law would suggest that the case might not be readily manageable as a class action, that is an issue

that the Supreme Court has specifically stated a court need *not* consider in determining

whether a class should be certified for settlement purposes. *Amchem Prods, Inc.* 521 U.S.

at 620.

49.     The Court therefore finds that common issues of law and fact

predominate for purposes of this settlement.

50.     **Superiority** — Matters pertinent to a finding of superiority include:

the interest of members of the class in individually controlling the prosecution or defense

of separate actions; the extent and nature of any litigation concerning the controversy

already commenced by or against members of the class; the desirability or undesirability

of concentrating the litigation of the claims in the particular forum; and the difficulties

likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

51.     **Interests of Individual Members** — The interest of class members

in conducting separate lawsuits does not require denial of class certification when a large

number of the claims class members would have would be so small that class members

would be deterred from bringing actions on their own. *See, e.g., Duhaime v. John

Hancock Mut. Life Ins. Co.,* 177 F.R.D. at 64; *In re Prudential Ins. Co. of Am. Sales

Practices Litig.,* 962 F. Supp. at 523. As the Supreme Court recently emphasized:

> The policy at the very core of the class action
> mechanism is to overcome the problem that
> small recoveries do not provide the incentive for
> any individual to bring a solo action prosecuting
> his or her rights. A class action solves this
> problem by aggregating the relatively paltry

> potential recoveries into something worth
> someone's (usually an attorney's) labor.

*Amchem Prods, Inc.*, *521 U.S. at 617* (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d
338, 344 (7th Cir. 1997)).

      52.    In this matter, many of the candies at issue cost consumers less than
a dollar or two. As such, this is exactly the type of dispute class actions were created to
govern. In addition, because Class Members who wished to pursue their own lawsuit
could have requested exclusion, no Class Member was precluded from conducting a
separate lawsuit if he or she so desired. Moreover, the interest of Class Members in
pursuing their individual claims is actually advanced by the Settlement Class proposed in
this case because the Settlement itself provides an efficient and cost-free means for Class
Members to present individual claims and participate in the refund benefit. It must also
be noted that the claims process is absolutely as easy and convenient for class members as
possible. All that is required is that a class member sign a claims form attesting to the
number of "covered products" they purchased (up to five) and return the form. Class
members need not provide a proof of purchase, a receipt or even a verifying affidavit to
receive a class benefit.

**A.**    **Concentration of Litigation in One Forum.**

      53.    Because this case will be settled (not tried), the desirability of
concentrating the litigation in a particular forum is consistent with certification.

Moreover, it clearly is more efficient to have these claims resolved in one forum, regardless of whether the case is settled or not.

**B.    Manageability.**

54.    Given the Supreme Court's holding that a court certifying a Settlement Class need not decide whether or not a class action would be manageable at trial, *Amchem Prods, Inc.,* 521 U.S. at 620, this Court need not consider the issue of manageability. It is nevertheless worth noting that the proposed Settlement resolves any manageability problems that would have been present if settlement had not been achieved, by creating a mechanism for reviewing the individual claims of Class Members. The Settlement Agreement thus permits what may be a sizable number of Class Members to achieve individual relief without burdening the judicial system, and thereby "results in a large saving of judicial resources." *See Margaret Hall Found., Inc. v. Atlantic Fin. Management, Inc.,* 1987 U.S. Dist. LEXIS 7528, at *15 (D. Mass. July 30, 1987).

55.    It is also persuasive that numerous other class actions, when confronted with almost identical allegations, have concluded that the necessary predicates for a settlement class are present: *Savagio v. EAS*, Jefferson County Circuit Court, Alabama, CV-01-1807; *Bryson v. Atkins Nutritionals, Inc.*, Jefferson County Circuit Court, CV-02-1511; *Bryson v. Universal Protein Supplements, Corp.*, Jefferson County Circuit Court, CV-03-392; *Pool v. Rexall Sundown, Inc.*, District Court for Seqoyah County, Oklahoma, Case No.: CJ 2002-1253.

556435                                    21

56. Based on the above, the Court grants final certification of the Settlement Class in this case.

## V. FAIRNESS OF THE SETTLEMENT

57. In considering whether to approve the proposed Settlement under Federal Rule of Civil Procedure 23(e), the Court must determine whether the Settlement is "fair, adequate and reasonable and ... not the product of collusion between the parties." *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977). Judicial evaluation of a proposed class action settlement involves a limited inquiry into whether the possible rewards of continuing the litigation – with its attendant risks and costs – are outweighed by the benefits of the settlement. *Elkins v. Equitable Life Ins. Co.*, 1998 U.S. Dist. LEXIS 1557, at *76 (M.D. Fla. Jan. 27, 1998); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1553 (M.D. Fla. 1992).

58. While the Court must consider a number of factors, it is well-settled that "the decision on the proposed settlement should not be converted into an abbreviated trial on the merits." *Kusner v. First Pa. Corp.*, 74 F.R.D. 606, 608 (E.D. Pa. 1977); *see also Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 660, 6780 (M.D. Ala. 1988) (in context of considering approval of class settlements, courts do not decide the merits or resolve contested legal questions). As noted in *In re National Student Mktg. Litig.*, 68 F.R.D. 151, 55 (D.D.C. 1974):

556435          **22**

> It is well established that the court assumes a
> limited role when requested to approve a class
> action settlement proposal. While the interests
> of the class members must be carefully
> protected . . . the Court must avoid deciding or
> trying to decide the likely outcome of a trial on
> the merits.

59.     The factors that the Court should consider are: (1) the likelihood of

success at trial; (2) the range of possible recovery; (3) the point on or below the range of

possible recovery at which a settlement is fair, adequate and reasonable; (4) the

complexity, expense and duration of litigation; (5) the substance and amount of

opposition to the settlement; and (6) the stage of proceedings at which the settlement was

achieved. *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).

60.     The Court's assessment of these factors should be "informed by the

strong judicial policy favoring settlement as well as by the realization that compromise is

the essence of settlement." *Bennett,* 737 F.2d at 986; *accord Cotton v. Hinton,* 559 F.2d

at 1331 ("particularly in class action suits, there is an overriding public interest in favor of

settlement"). *See also Dillard v. Crenshaw County,* 740 F. Supp. 813 (M.D. Ala. 1990);

*Donovan v. Estate of Fitzsimmons,* 778 F.2d 298, 307 (7th Cir. 1985).

## VI.   PLAINTIFFS' LIKELIHOOD OF SUCCESS AT TRIAL.

61.     In assessing Plaintiffs' likelihood of success at trial for purposes of

determining whether the Settlement is fair, adequate and reasonable, the Court should

make only a "limited inquiry into whether the possible rewards of continued litigation

with its risks and costs are outweighed by the benefits of the settlement." *Ressler v.*

*Jacobson,* 822 F. Supp. 1551, 1553 (M.D. Fla. 1992); *accord Cotton v. Hinton,* 559 F.2d at 1330 ("in evaluating the terms of the compromise in relation to the likely benefits of a successful trial, the trial judge ought not try the case [on the merits] in the settlement hearings"); *Mashburn v. National Healthcare, Inc.,* 684 F. Supp. 660, 670 (M.D. Ala. 1988) (in the class action settlement context, courts "do not decide the merits of the case or resolve unsettled legal questions") (citations omitted).

62.    The existence of potential obstacles to Plaintiffs' success on the merits argues in favor of approving the settlement. *See Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 538-39 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 823-24 (D. Mass. 1987). This settlement replaces the risks in establishing liability and damages with immediacy and certainty of a substantial recovery. *See, e.g., Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975); *Garst v. Franklin Life Insurance Co.,* 1999 LEXIS 222666, *62 (N.D. Ala. 1999). These include, but are not limited to possible federal preemption of Plaintiffs' claims; a possible federal statutory exemption for this type of labeling, possible First Amendment hurdles Plaintiffs must overcome to maintain their claims and the fact that the allegedly deceptive labeling clearly disclosed that "Low Carb" referred to "net effective carbohydrates."

63.    In support of their positions, Defendants have submitted the affidavit of Dr. Barbara Rasco, Ph.D., J.D. Dr. Rasco is a Ph.D. professor of Food Science and Human Nutrition at Washington State University. Dr. Rasco also holds a juris doctorate

degree from Seattle University School of Law and is licensed to practice law in

Washington. Dr. Rasco testifies, via her affidavit, that the labeling put at issue by the

Complaint and Amended Complaint, as well as the "net carb" labels now in use by

Russell Stover, comply and have always complied, with all requirements of the Food,

Drug and Cosmetic Act ("the FDCA"), 21 U.S.C. §321, et. seq. as amended, and the

FDCA's implementing regulations at 21 C.F.R. Dr. Rosco also casts serious doubt on

Plaintiffs' ability to maintain a fraud claim, or any common law claim based on deceit,

deception, fraud or suppression. Dr. Rasco testified that:

> Russell Stover's low carbohydrate product
> labels are not false. Based upon my education,
> training, knowledge, skill, experience, and my
> review of the labels for Russell Stover's low-
> carbohydrate product line, it is my opinion that
> the labels for Russell Stover's low-carbohydrate
> product line are not false and misleading.
> Russell Stover's low-carbohydrate product line
> specifically targeted persons who follow the
> Atkins diet or a low-carbohydrate diet. Russell
> Stover's low-carbohydrate product line was
> intended to appeal to consumers who want
> candies that are low in "net effective"
> carbohydrates. Net-effective carbohydrates are
> carbohydrates that have a notable effect on a
> person's blood-sugar levels. In this regard, the
> principal display panels of the labels for Russell
> Stover's low-carbohydrate product line bear the
> words LOW CARB in large print on the
> principal display panel.    Additionally, the
> principal display panels also bear a burst that
> contains the phrase "Carbs Per Piece*" and a
> number representing the amount of "Carbs Per
> Piece*" for each piece of candy. The asterisk at
> the end of the phrase "Carbs Per Piece*" directs

consumers reading the labels to the back panels of the labels. On the back panels of the labels, a "Low Carb Facts" chart sets forth the method by which Russell Stover arrives at the numerical value for the total number of "net effective carbs." By incorporating this calculation chart into the back panels of the labels, Russell Stover deliberately informs consumers about the amounts of net-effective carbohydrates in its products.

64.     Furthermore, although the Court has considered the effect of possible variations in state law in certifying the Class, it has neither made, nor is required to make, any choice of law determination in assessing the obstacles Plaintiff might face at trial. *See Michels v. Phoenix Home Mut. Life Ins. Co.,* 1997 N.Y. Misc. LEXIS 171, at \*51-52, *Wilson v. New York Life Ins. Co.,* 1995 N.Y. Misc. LEXIS 652, at \*41; *Bowling v. Pfizer, Inc.,* 143 F.R.D. 141, 167-68 (S.D. Ohio 1992).

65.     **Range of Possible Recovery and Reasonableness of Settlement Amount** — The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine "the possible range of recovery" and then ascertain where within that range "fair, adequate, and reasonable settlements lie." *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. at 541-42; *accord Bennett,* 737 F.2d at 986.

66.     There is no fixed point above or below which a settlement is or is not fair. Indeed, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is inadequate; there is no reason why a satisfactory settlement could not amount to a

hundredth or even a thousandth part of a single percent of the potential recovery." *TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456, 463-64 (2d Cir. 1982) (internal quotation marks omitted); *Garst,* 1999 LEXIS 22666, *65.

67.    In this matter, class members can choose either a cash refund or a forty percent (40%) discount coupon. Further, class members are free to use the 40% discount coupon on any of a number of candies, many of which may cost substantially more than that originally purchased by Plaintiffs.

68.    Given that all but two of the seventy-seven (77) class members who have filed claims to date have claimed the maximum of five (5) class benefits, and given that over half of the seventy-seven (77) class members have claimed the coupon benefit, there is a very real possibility class members are receiving a benefit which exceeds the total purchase price they paid for the candies at issue. Given the doubts regarding Plaintiffs' likelihood of success in recovering anything for their claims, the ease of the claims process and the substantial benefit afforded to Class Members by the settlement, this factor also weighs heavily in favor of final approval.

69.    **Length, Complexity and Cost of Further Litigation** — The Court finds that this factor also supports approval of the Settlement. The case, prior to the agreement between plaintiffs and Russell Stover promised to be perhaps one of the most procedurally complex, and technically difficult and time-consuming cases on the Court's docket.    Class certification would have been contested, and the nonprevailing party would have had the right to an appeal of the Court's determination. On the merits, the

case would clearly have involved vigorous and time-consuming law and motion practice regarding scientific issues associated with the proper classification of carbohydrates, their inclusion on Russell Stover labeling and the applicability of First Amendment commercial speech rights - - issues that would have necessitated multiple experts on each side. Additionally, the trial itself would likely have lasted for weeks, followed by the nonprevailing party likely seeking review of the decision in the appellate courts. It is reasonable to conclude that, in the absence of settlement, the ultimate conclusion would have taken years rather than months. It is certain, in any event, that litigating this case would be lengthy, complex and expensive. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d at 318; *In re Manufacturers Life Ins. Co. Premium Litig.,* 1998 U.S. Dist. LEXIS 23217, No. 96-CV-230 BTM (AJB), slip op. at 10 (S.D. Cal. Dec. 21, 1998); *Elkins v. Equitable Life Ins. Co. of Iowa,* 1998 U.S. Dist. LEXIS 1557, 1998 WL 133741, at *27. The proposed Settlement grants Class Members timely relief without their having to endure the risk, complexity, duration and expense inherent in continuing this litigation. *See Michels v. Phoenix Home Life Mut. Ins. Co.,* 1997 N.Y. Misc. LEXIS 171, at *88; *Ressler,* 822 F. Supp. at 1554.

70.     **Stage of Proceedings at Which Settlement Was Achieved** — In assessing this factor, the relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses. *See, e.g., Garst,* 1999 LEXIS, 22666, *70, *Woodward v. NOR-AM Chem. Co.,* 1996 U.S. Dist. LEXIS 7372, 1996 WL 1063670, at *21. Comprehensive discovery is not necessary, *id.*;

rather, "only some reasonable amount of discovery" is required, *Elkins v. Equitable Life Ins. Co. of Iowa,* 1998 U.S. Dist. LEXIS 1557, 1998 WL 133741, at \*31 (internal quotation marks omitted). In this case, extensive document discovery, deposition, as well as other informal discovery, was completed. The discovery enabled Plaintiffs' counsel not only to assess the legal and factual merits of their clients' claims, but also to negotiate a settlement that provides relief specifically tailored to Class Members' needs in light of the risks associated with the continued litigation. *See, e.g., Ressler,* 822 F. Supp. at 1554-55 ("plaintiffs have conducted sufficient discovery to be able to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation"); *accord Duhaime,* 177 F.R.D. at 67.    This factor favors approval of this Settlement.

71.    **Absence of Collusion Among the Parties** — This Settlement is the product of extensive arms-length negotiations by experienced counsel,  after substantial factual investigation, legal analysis, and discovery.    *Adams,* 676 So. 2d at 1279.  The *Adams* Court noted that no collusion exists where the parties are represented by counsel who are all experienced in complex litigation, who have properly weighed and balanced the factual and legal issues, and who evaluated the settlement proposals in good faith. *Id.* at 1280.    The Settlement reached is the culmination of negotiations by experienced and informed counsel vigorously pursuing their perspective clients' interests.    Plaintiffs' counsel, who collectively have decades of experience in complex class action work, negotiated the settlement with a view toward resolving the issues in dispute on the most

29

favorable terms for the Class. Counsel have reviewed audited financial statements of Russell Stover and other financial information, and have carefully considered, among other things, the strengths and weaknesses of Plaintiffs' claims against Russell Stover the uncertainties inherent in this complex litigation, and the substantial benefits provided by the settlement to the members of the Class. In light of the benefits available under the settlement and the costs, risks, and inevitable delay involved in continued litigation and likely appeals, this settlement is in the best interest of the Class and is in all respects, fair, reasonable, and adequate. No evidence of collusion was offered at the December 22 hearing, or at any other time. There was no collusion in this Settlement.

72.     **Substance and Amount of Opposition to the Settlement** — Favorable reception by the class members constitutes "strong evidence" of the fairness of the settlement and supports judicial approval. In re: Paine Webber Limited Partnerships Litigation, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) *aff'd* 117 F.3rd 721 (2d Cir. 1997), (citing *Detroit v. Grinnelle Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)). This Court, upon preliminary review, required Notice to be published and the Notices were published. There has been no opposition to this Settlement from the Class. No Class Members have requested exclusion from the class and no objections were submitted. The Class in this case has positively endorsed this Settlement as demonstrated by the fact that as of December 10, 2005, 199 putative class members have already called the claims administrator regarding the settlement and 77 have already returned a claims form claiming a class benefit.

556435                                            30

73.   **Views of Experienced Class Counsel** — The final factor to be considered in determining whether to approve the Settlement is the experience of Class Counsel and their views of the Settlement. *Cotton*, 559 F.2d at 1330; *Ressler*, 822 F. Supp. at 1553.   Plaintiffs' counsel have extensive experience in litigating and settling large, nationwide class actions.  This factor also weighs in favor of finding the Settlement fair, adequate and reasonable.

74.   **The Settlement is Fair, Adequate and Reasonable** — For all of the reasons set out above, the Court finds that the Settlement in this case is fair, adequate and reasonable.

## VII.   FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO PLAINTIFF'S ATTORNEYS' FEES AND EXPENSES

75.   Class Counsel have requested an award of attorneys' fees and the reimbursement of expenses in an amount not to exceed $311,666.67 from the fund created by the Settlement.   The Court finds that the fee and expense negotiations were conducted at arm's length, only after the parties had reached agreement on all terms of the Settlement. There is absolutely no evidence in this case that the Settlement, or the fee and expense agreement, was in any way collusive.  Under these circumstances, the Court gives great weight to the negotiated fee in considering the fee and expense request.

76.   Such agreements between plaintiffs and defendants in class actions are encouraged, particularly where the attorneys' fees are negotiated separately and only

after all terms of the settlement have been agreed to between the parties. *See Johnson v. Georgia Hwy. Express, Inc.,* 488 F.2d 714, 720 (5th Cir. 1974) ("in cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees"); *Hensley v. Eckerhart,* 461 U.S. 424, 437, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983) (noting that negotiated, agreed upon attorneys' fees are the "ideal" toward which the parties should strive and stating that "ideally, of course, litigants will settle the amount of a fee"); *Williams v. MGM-Pathe Communications Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997).

77. The Court finds that the Plaintiff is indeed entitled to be paid fees and their expenses as a result of the substantial common benefit provided to the Class and for the reasons discussed below, approves Plaintiffs' request for an award of attorneys' fees and expenses in the full and total amount of $311,666.67 to be paid from the $935,000.00 fund created by the settlement.

78. In the Eleventh Circuit, the preferred approach to calculating attorneys' fees to be awarded in a common benefit case is as a percentage of the class benefit. *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991). This accomplishes two objectives. First, it is consistent with the private marketplace where contingent fee attorneys are regularly compensated on a percentage of recovery method. *In re Public Service Co. of New Mexico,* 1992 U.S. Dist. LEXIS 16326, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) P96,988, at 94,291-92 (S.D. Cal. July 28, 1992). Second, it provides a strong incentive to Plaintiffs' counsel to obtain the

maximum possible recovery in the shortest time possible under the circumstances. *See In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992); *Duhaime v. John Hancock Mut. Life. Ins. Co.,* 989 F. Supp. 375, 377 (D. Mass. 1997) (the "advantage of the [percentage] method ... is that it focuses on result, rather than process, which better approximates the workings of the market place") (citation, internal quotations omitted). Finally, the percentage approach reduces the burden of the Court to review and calculate individual attorney hours and rates and expedites getting the appropriate relief to class members. *See In re Continental Illinois,* 962 F.2d at 572; *In re Activision Sec. Litig.,* 723 F. Supp. 1373 (N.D. Cal. 1989).

79.     The court in the *Johnson* case enumerated several factors a court must consider in evaluating requests for attorneys' fees.  488 F.2d at 717-19.  Those factors of particular relevance here include: (*i*) the results obtained, (*ii*) the economics of the prosecution of the class action and the experience of counsel, (*iii*) the professional skill and standing of respective counsel, (*iv*) the customary fee for similar cases, (*v*) the time and labor required and, (*vi*) the reaction of the Class Members. As discussed below, the Court has considered each of these factors in turn and finds that Plaintiffs' request is fair and reasonable.

A.     **The Results Obtained** — Courts frequently consider this factor to be the most critical.    In this instance, Counsel has negotiated a beneficial and creative settlement. This result is extraordinary and warrants approval of Class counsel's request.

**B.     The Economics Involved** — Class Counsel undertook this litigation on a completely contingent basis.   Class Counsel never knew whether they would be compensated, yet expended hundreds of hours of time and incurred expenses.   In return for that expenditure, Class Counsel have negotiated a Settlement which provides real benefits to class members, yet request a fee well below that typically awarded in contingent fee cases.   The financial relief available to Class Members is substantial; however, this amount does not reflect the total value of relief provided to the class members under the Settlement.   As discussed above, the proposed Settlement also includes non-monetary injunctive relief.

**C.     The Professional Skill And Standing Of Counsel** — Plaintiffs counsel are experienced in both complex class actions. The Settlement is a direct result of their experience, reputation and ability in these types of cases. The professional skill and level of the representation in this case are beyond question and support approval of the requested award.

**D.     The Customary Fee For Similar Cases** — The evidence in this case, including the affidavits and memoranda submitted in support of approval, establishes that the cash value of the settlement is $935,000.00.   Given this valuation, Plaintiffs' counsel's request for fees and reimbursement of expenses is a reasonable one-third of the cash value of the Settlement. This does *not* include other substantial benefits to the Class, including the costs incurred in providing Notice to the Class and implementing and administering the Settlement — costs which are ordinarily borne by plaintiffs.   If the

556435                                                                          34

Court considers the additional benefits being covered by (which are usually paid for by the Class) to be substantial and real benefits, *i.e.*, the cost of administering the Settlement, the cost of Notice and the like, the total benefit to the Class is much higher.

E.      **The Time And Labor Required** — Plaintiffs' counsel expended substantial and, more importantly, productive attorney time in litigating and resolving this action. This expenditure of time and effort, on a wholly contingent basis, confirms the reasonableness of Plaintiffs' counsel's fee request under the lodestar/multiplier approach. It is important to note, however, that time expended is just one factor in examining the reasonableness of a fee award using lodestar. Plaintiff counsels' fee request is, however, reasonable under a lodestar analysis as evidenced by the submissions of counsels' time expended, reasonable hourly rate, the risk involved in the litigation. A multiplier of two is easily deemed reasonable in the context of this litigation.

F.      **The Reaction Of The Class** — The absence of objections to Class Counsel's fee request also supports approval of the request. This lack of objections is "strong evidence of the propriety and acceptability of that request." *Ressler v. Jacobson,* 149 F.R.D. at 656.

80.      Application of the pertinent *Johnson* factors supports approval of the fee and expense award, which is hereby granted. In sum, Class Counsel's request for attorneys' fees and reimbursement of expenses is fair and reasonable under all relevant criteria. The Court hereby approves the fee and reimbursement of expenses in the total

amount of $311,666.67 to be paid from the settlement fund created by the Settlement Agreement.

## VIII. REVISION OF UNCLAIMED CLASS BENEFIT TO RUSSELL STOVER

81.    As approved by this Court's preliminary Order certifying the class signed on September 26, 2005, any benefits set aside for class members pursuant to this agreement which are not claimed by class members shall be returned to Russell Stover. The Court further finds that neither this settlement nor its terms are governed by Mo.Rev.Sta. §447.535, Mo.Rev.Sta. §420.270, or Mo.Rev.Sta. §445.500-447.595 inclusive. The Court also holds that no similar like statute of law, either Federal or State, governs any unclaimed class funds or prohibits reversion of any unclaimed class funds to Russell Stover.

## VIII. RUSSELL STOVER'S "NET CARB" LABELING SATISFIES THE CURRENT REQUIREMENTS OF FEDERAL AND STATE LAW

82.    The Court further finds as a matter of fact and law, that Russell Stover's "net carb" labeling and/or advertising is proper and legal in all respects pursuant to all current governing laws and all regulations, including, but not limited to, federal law, federal regulations, all state laws, and all state regulations. Pursuant to the Court's Preliminary Approval Order executed on September 26, 2005, Russell Stover will not be in violation of any provision of this Court's Final Order, including the injunction entered by consent as a part of the Settlement, because any individual, entity or store which provides candy for sale to the public, continues to offer for sale Russell Stover candies

with "low carb" labels, so long as the labeling was timely affixed to the product in compliance with all agreements with the United States Food and Drug Administration.

Dated this the _____22nd_____ day of _____December_____, 2005.

_____

U.W. Clemon
Chief United States District Judge